JUDGE DAVID GUADERRAMA

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JOSHUA CACHO,** a Texas resident, | § | |
| **Plaintiff,** | § | |
| v. | § | |
| **AMERICAN HEALTH PLANS, LLC** a Michigan Limited Liability Company, | § | |
| **Defendant.** | § | |

FILED
OCT 05 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ______ DEPUTY CLERK

EP23CV0372

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

**1.** Plaintiff JOSHUA CACHO ("Plaintiff") a natural person, resident of the Western District of Texas, and was present in Texas for the last two calls in this Complaint, in this case in El Paso County, Texas.

**2.** Defendant AMERICAN HEALTH PLANC, LLC ("American Health") is a Limited Liability Company organized and existing under the laws of Michigan and can be served via registered agent Joseph Karam at 16600 18 Mile Rd Clinton TWP, Michigan 48038, United States.

**3.** John Does 1-9 are overseas telemarketers Defendant American Health hired to solicit new health insurance plans at their behest. John Does 1-9 are out of reach and jurisdiction of the laws of the United States.

**4.** Unnamed Party CASSIE SEMOS ("Cassie") is employed by Defendant American Health.

**JURISDICTION AND VENUE**

**5.** Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

**PERSONAL JURISDICTION**

**6.** This Court has general personal jurisdiction over Defendant because they have repeatedly placed calls to Texas residents and derived revenue from Texas residents, and they sell goods and services to Texas residents, including Plaintiff. Defendant is licensed to market and sell insurance in Texas.

**VENUE**

**7.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

**8.** This Court has venue over Defendant American Health because the calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

**9.** In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

**10.** The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

**11.** The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

**12.** The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

**13.** Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

**14.** The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

**15.** According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

**16.** The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

**17.** The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

**18.** *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

**19.** The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

**20.** Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

**21.** The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

**22.** As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

**23.** Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a salesperson is available to take the call.

**24.** In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."

**25.** A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas Business and Commerce Code § 302.101**

**26.** The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

**27.** The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

**28.** Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

**29.** The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50

**FACTUAL ALLEGATIONS**

**30.** Plaintiff's personal cell phone ending in 3881 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendant American Health's telemarketers.

**31.** Plaintiff personally registered the cell phone at issue in this case on the National-Do-Not-Call Registry on July 01, 2022.

**32.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**33.** Defendant American Health operates as a health insurance broker for multiple insurance companies.

**34.** Defendant American Health's telemarketers called Plaintiff at least nine (9) times. All calls were soliciting health care plans.

**35.** Upon information and belief Defendant American Health's telemarketers called Plaintiff more times over the last four (4) years that he is currently unaware of without the benefit of Discovery.

**36.** Upon information and belief Defendant American Health used other marketing agencies to contact Plaintiff over the last four (4) years that Plaintiff is unaware of at this time without the benefit of Discovery.

**37.** Defendant American Health's telemarketers, at the direction of American Health, claimed they were calling regarding the "ACA", purposefully conflating their identity with the Affordable Care Act, in an effort to confuse the average consumer.

**38.** **Call #1, DNC Request #1,** *See Table A,* On August 11, 2023, at 11:30 PM Plaintiff received a call from Defendant American Health's telemarketer with 407-369-9446 appearing on the caller-id. Plaintiff answered with a "hello" and was greeted by a foreign-sounding telemarketer claiming his name was "Steven" regarding the ACA and was soliciting dental and vision health care coverage.

**39.** Plaintiff engaged the telemarketer for the purpose of identifying the party(s) responsible for the call and so gave his current age, and the telemarketer stated he did not qualify for the

coverage through the ACA. Plaintiff told the telemarketer to not call back and disconnected the line.

**40.** Calls #2-8, Multiple DNC Requests, between August 12, 2023 – August 22, 2023, Plaintiff received at least seven (7) calls all from Defendant's Telemarketers claiming to be calling in connection with the ACA and soliciting dental and vision health care plans.

**41.** On each of the calls described in Paragraph 40, Plaintiff either hung up the phone with a response or told the telemarketer to stop calling.

**42.** Call #9, See Table A, on August 29, 2023, at 10:24 AM Plaintiff received a call from Defendant American Health's telemarketer with 407-369-9446 appearing on the caller-id. Plaintiff answered with a "hello" and was greeted by a foreign-sounding telemarketer claiming his name was "Mark" regarding the ACA and was soliciting dental and vision health care coverage plans.

**43.** Plaintiff handed the phone to a friend that was of age for the sole purpose of verifying the true identity of the party(s) responsible for the numerous calls he had received over the last few weeks from Defendant.

**44.** The call was transferred to Defendant's employee Cassie.

**45.** Cassie provided Defendant's information over the phone and stated she was employed with them, and also sent an email from cassie@ahpins.com with her insurance license information and Defendant's company information. *See Exhibit A*.

**46.** Table A below displays the calls received from Defendant American Health.

**Table A**

| NO. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | Aug 11, 2023 | 11:30 AM MT | (407) 369-9446 | Steven regarding ACA Dental and vision Health Care - DNC Request #1 |
| 2 | Aug 12, 2023 | 4:05 PM MT | (407) 282-5740 | Alex regarding ACA Dental and vision Health Care - DNC Request #2 |
| 3 | Aug 15, 2023 | 8:10 AM MT | (407) 530-1765 | Michelle regarding ACA Dental and vision Health Care - DNC Request #3 |
| 4 | Aug 17, 2023 | 2:28 PM MT | (706) 921-3469 | Michael regarding ACA Dental and vision Health Care - DNC Request #4 |
| 5 | Aug 18, 2023 | 8:21AM MT | (339) 777-8331 | Roger regarding ACA Dental and vision Health Care - DNC Request #5 |
| 6 | Aug 18, 2023 | 9:13 AM MT | (812) 289-0922 | Susan? regarding ACA Dental and vision Health Care - DNC Request #6 |
| 7 | Aug 21, 2023 | 11:10 PM MT | (573) 509-5062 | ? regarding ACA Dental and vision Health Care - DNC Request #7 |
| 8 | Aug 22, 2023 | 10:31 AM MT | (337) 283-1106 | Brian regarding ACA Dental and vision Health Care - DNC Request #8 |
| 9 | Aug 29, 2023 | 10:24 AM MT | (206) 746-6411 | Mark regarding ACA Dental and vision Health Care – Transferred to Cassie, Received email confirming Defendant's identity. |

**47.** Plaintiff did not have an established business relationship with Defendant American Health, nor did Plaintiff consent to the calls sent to his personal phone.

**48.** Each and every solicitation call from Defendant American Health after August

11, 2023, was a knowing and willful violation of the TCPA as Plaintiff had Delivered a DNC request to Defendant Resolve on August 11, 2023.

**49.** Each and every call phone call between August 12, 2023, and August 29, 2023, was a knowing and willful violation as Plaintiff had informed Defendant American Health's telemarketers he wasn't interested and to stop calling.

**50.** Plaintiff made numerous DNC Requests to Defendant American Health's telemarketers that went ignored.

**51.** Plaintiff did not provide his phone number to Defendant American Health or their telemarketers at any point.

**52.** Upon information and belief, Defendant American Health did not have a written do-not-call policy while their telemarketers were sending Plaintiff the calls.

**53.** Upon information and belief, Defendant American Health did not train their employees who engaged in telemarketing on the existence and use of any do-not-call list.

**54.** Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

**55.** Defendant knew or should have known that its conduct would violate the TCPA and its regulations because Defendant American Health operates in a highly regulated telephone solicitation industry.

**56.** American Health knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

**57.** Defendant knew or should have known the requirements for making TCPA, and Texas sales-compliant telemarketing calls and thus knew or should have known that the unauthorized telemarketing calls and the many disregarded DNC requests complained of herein violated the TCPA, and Texas Business Commerce Code 302.101 and all of their regulations.

**58.** No emergency necessitated these calls.

## VICARIOUS LIABILITY OF DEFENDANT AMERICAN HEALTH FOR CALLS PLACED BY JOHN DOES 1-9 OFFSHORE TELEMARKETERS

**59.** Defendant American Health is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as the overseas marketers employed by Senior Benefits. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

**60.** Through information and belief agents of American Health, John Does 1-9 are offshore telemarketers outside the laws and jurisdiction of the United States.

**61.** American Health hired agent ("Fake ACA") which is the employer of John Does 1-9, to market and solicit vision and dental health care coverage plans at their direction and control.

**62.** American Health writes the script which is used by their agent Fake ACA's telemarketers, and trains each and every employee of their agent's telemarketing company directly on the usage of the scripts.

**63.** American Health instructed their agent Fake ACA on which states to call and set the minimum qualifications for Fake ACA to qualify the prospective clients.

**64.** American Health pays directly for each client sent as a result of the illegal telemarketing calls made by Fake ACA.

**65.** American Health has a contract with Fake ACA and is fully aware that each prospective client has been sent to initially through illegal telemarketing calls.

**66.** Fake ACA is the employer of John Does 1-9 and therefor is the agent of American Health.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**
**AS A RESULT OF THE CALLS**

**67.** Defendant American Health's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**68.** Defendant American Health's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

**69.** Defendant American Health's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

**70.** Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

**PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER**

**71.** The calls were to Plaintiff's cellular phone number 407-577-3881 which is Plaintiff's personal phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending

and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION:

### COUNT ONE:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**72.** Plaintiff incorporates the preceding paragraphs 1-71 as if fully set forth herein.

**73.** Defendant American Health's telemarketers called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**74.** Plaintiff was statutorily damaged at least nine (9) times under 47 U.S.C. § 227(c)(3)(F) by Defendant American Health by the telemarketing calls described above, in the amount of $500.00 per call.

**75.** Plaintiff was further statutorily damaged because Defendant AMERICAN HEALTH willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**76.** Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

### COUNT TWO

**(Violations of Texas Business and Commerce Code 302.101)**
**Failure to obtain a Telephone Solicitation Registration Certificate**

77. Plaintiff incorporates the preceding paragraphs 1-71 as if fully set forth herein.

78. Defendant and/or their affiliates or agents made at least nine (9) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.

79. As a result of Defendant's and/or their affiliates or agent's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

80. As a result of Defendant's and/or their affiliates or agents' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees. Tex. Bus. and Com. Code 302.302(d

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant American Health as follows:

A. Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B. An award of $1500 per call in statutory damages arising from the TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 9 calls.

C. An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for nine (9) calls.

D. An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and

severally against the corporation for nine (9) calls

E. An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity.

F. Such further relief as the Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

October 05, 2023,

Respectfully

Joshua Cacho
Plaintiff, Pro Se
728 Silver Birch Place
Longwood, Florida
Jcacho1848@gmail.com
407-577-3881

# EXHIBIT A

Gmail jaime chaco

## American Health Plans

1 message

**Cassie Semos** <Cassie@ahpins.com>
To: "jaimechacon1855@gmail.com" <jaimechacon1855@gmail.com>

Hello Jamie,

Here is my information. Give me a call back before Thursday so we can get you signed up and started for Friday.

**Cassie Semos**
**NPN # 19566244**

AMERICAN HEALTH PLANS
AN INTEGRITY COMPANY




**Toll Free**:866-487-9887
**Direct**: 586-331-3124
**Fax**: 586-331-3077
**[www.ahpins.com]www.ahpins.com**

**Like us on Facebook & Twitter**

**P.S. Referrals are a big part of my business! If you have any friends, family, or neighbors wh experience, please share my information! When your with me your family!**

This email message and any files transmitted with it may contain confidential material and are intended only for those persons or you have received this email message and information in error, please contact the sender and delete all copies that you have rece

---




**Collage_2023-08-29_13_38_36.jpg**
337K