UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| JOSHUA CACHO,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN HEALTH PLANS, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION NO. 3:23-CV-00372 |

**DEFENDANT AMERICAN HEALTH PLANS, LLC'S MOTION TO DISMISS**

COZEN O'CONNOR, P.C.

Rachel B. Soloman (admitted *pro hac vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
rsoloman@cozen.com

Tyler M. Frankel
State Bar Number: 24101767
1717 Main Street, Sute 3100
Dallas, Texas 75201
tfrankel@cozen.com

## INTRODUCTION

Plaintiff Joshua Cacho's Complaint (Doc. 1) asserts claims against Defendant American Health Plans, LLC ("American Health" or "Defendant") under the Do-Not-Call ("DNC") regulations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), and Tex. Bus. & Comm. Code § 302.101 ("Section 302.101"). American Health moves this Court to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(2), as the Court lacks personal jurisdiction over American Health, and 12(b)(6), as Plaintiff fails to state a claim.

As an initial matter, there are no grounds on which this Court may assert personal jurisdiction over American Health. American Health is a foreign limited liability company incorporated under the laws of Delaware with its principal place of business in Michigan, and therefore is not "at home" in Texas. Further, American Health has taken no action directed at this forum. Plaintiff has not (and cannot) allege otherwise.

In the alternative, Plaintiff's Complaint should be dismissed with prejudice as he fails to state a claim. First, American Health cannot be held vicariously liable for the actions of an independent sales broker, and Plaintiff alleges no facts to suggest otherwise. Further, Plaintiff acknowledges that the alleged calls at issue were placed to a cellular phone, not a residential telephone line, and therefore TCPA's DNC regulations are not triggered. Finally, Plaintiff's Section 302.101 claim must be dismissed, as: (1) Plaintiff's claim is impermissibly based on a threadbare recital of the claim's elements; (2) Section 302.101 provides a limited private right of action under the Texas Deceptive Trade Practices Act ("DTPA"), which the allegations do not support; and (3) Plaintiff may at most pursue "economic damages or damages for mental anguish," which he did not sustain.

For these and other reasons, American Health moves this Court to dismiss the Complaint with prejudice. This Motion is supported by the Declaration of Joseph Karam ("Karam Decl.").

## FACTUAL BACKGROUND

### I. Background on American Health

American Health is an Delaware limited liability company with its principal place of business in Michigan. Karam Decl., ¶ 1. Among other services, American Health provides health insurance plans and aims to provide members with quality health insurance at the lowest price. *Id.*, ¶ 2. American Health does not maintain any offices in Texas, have any employees in Texas, maintain any bank accounts in Texas, knowingly own any real or personal property in Texas, or have telephone or other listings in Texas. *Id.*, ¶¶ 3–8.

From time to time, American Health obtains sales leads from independent sales brokers. *Id.*, ¶ 12. These brokers connect with individuals actively seeking health insurance and, in some cases, and where the broker deems appropriate, transfer calls with such individuals to American Health. *Id*. American Health is careful with whom it partners to ensure compliance with telemarketing laws (e.g., the TCPA); however, American Health does not contract with these independent brokers to make outbound sales calls on American Health's behalf, direct to whom these independent brokers place calls or how, or otherwise direct or control these independent brokers' practices. *Id.*, ¶ 13.

### II. Allegations in the Complaint

Plaintiff alleges that he registered his phone number—(407) 577-3881—with the National DNC Registry on or about July 1, 2022. Doc. 1, ¶¶ 30–31, 71. He acknowledges that the phone number is a "cellular phone." *Id.*, ¶ 30. He claims that American Health violated the TCPA and Section 302.101 by calling him nine times at that number between August 11, 2023 and August 29, 2023. *Id*., ¶¶ 38, 40–42, 46.

According to the Complaint, no caller with whom Plaintiff purportedly spoke indicated that they were with American Health; rather, each caller "claim[ed] to be calling in connection

with the ACA [the Affordable Care Act] and solicit[ed] dental and vision health care coverage." *Id.*, ¶¶ 37, 40–42, 46. Upon receiving the ninth call from someone identifying only as "Mark," Plaintiff allegedly "handed the phone to a friend that was of age," who was in turn allegedly transferred to an individual named "Cassie." *Id.*, ¶¶ 42–44. This "Cassie"—who did not call Plaintiff—then allegedly "provided Defendant's information over the phone and stated she was employed with them." *Id.*, ¶¶ 45.

Based on this single transfer to "Cassie," Plaintiff alleges that all nine calls were placed by one agent—referred to as "Fake ACA"—allegedly hired by American Health, for whom American Health allegedly writes scripts, and with whom American Health allegedly contracts and pays directly. *Id.*, ¶¶ 59–66. Plaintiff provides no factual allegations to support such speculation. *See id.*

**III. American Health's Records**

American Health undertook a thorough search of its records and: (1) confirmed that it never made or directed anyone to make any telephone sales call to Plaintiff or the identified number at any time; and (2) found no record of any American Health employee that uses the phone numbers listed in the Complaint. Karam Decl., ¶¶ 10–11 .

American Health briefly accepted referrals from an independent broker, LiveTransfers.com ("LiveTransfers"). *Id.*, ¶ 14. LiveTransfers markets itself on its website as providing "TCPA compliant call center contacts and qualified prospects." *Id.*. In or around August 2023, an American Health employee received a live call transfer from LiveTransfers associated with the phone number (407) 577-3881. *Id.*, ¶ 15. The individual on the transferred call self-identified as "Jaime Chacon," indicated he was interested in obtaining health coverage, and began the application process for health insurance. *Id.* At no time on this call did he request not to receive future calls from American Health or otherwise. *Id.*

Neither American Health nor any of its agents placed or initiated this or any other call to the number (407) 577-3881; directed anyone to place or initiate such calls; or controlled LiveTransfers' decision to forward such calls to American Health. *Id.*, ¶ 16. At no time has American Health had any agreement or contract with LiveTransfers and it does not have any ongoing business relationship with LiveTransfers. *Id.*, ¶ 17. At no time did American Health have control over the means or methods by which LiveTransfers makes outbound calls or the ability to oversee or manage LiveTransfers practices. *Id.* Nor did American Health have any control over how LiveTransfers obtained leads or what LiveTransfers said during calls. *Id.* American Health did not authorize LiveTransfers to use American Health's logo, trademark, or trade name. *Id.*

## ARGUMENT

### I. This Court Should Dismiss the Complaint because It Lacks Personal Jurisdiction over American Health.

Under the Texas long-arm statute, a federal court may exercise personal jurisdiction over a non-resident defendant only if the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009); TEX. CIV. PRAC. & REM. CODE § 17.042. Federal due process requires a plaintiff to prove: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and (2) that the exercise of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Id*. at 398 (quotation marks and citations omitted).

When the alleged facts supporting jurisdiction are disputed under Rule 12(b)(2), "the party asserting personal jurisdiction has the burden to prove it exists." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Rels.*, 1 F.4th 346, 350 (5th Cir. 2021); *accord Monkton Ins. Servs., Ltd. v. Ritter,* 768 F.3d 429, 431 (5th Cir. 2014). The plaintiff must therefore meet his "burden to identify facts that

demonstrate a prima facie case of jurisdiction." *Buckley & Assocs.*, 1 F.4th at 350. The court must consider the entire contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985); *Callier v. Wide Merch. Inv., Inc.*, No. 22-0123, 2023 WL 3167440, at *2 (W.D. Tex. Apr. 27, 2023). While, the court may accept a plaintiff's non-conclusory, uncontroverted allegations as true, a plaintiff cannot rest on allegations controverted by a defendant's affidavits. *Pace v. Cirrus Design Corp.*, 636 F. Supp. 3d 714, 720 (S.D. Miss. 2022) (citing *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir. 1977)); *Thiam v. T-Mobile USA, Inc.*, No. 19-0633, 2021 WL 1550814, at *1 (E.D. Tex. Apr. 20, 2021). In other words, if the defendant has asserted facts in their affidavits that are only disputed by the plaintiffs' allegations (i.e., not supported by facts in a conflicting affidavit), then the defendant's assertions are taken as fact. *Id.*

Jurisdiction may be general or specific. The former requires "continuous and systematic" forum contacts and allows for jurisdiction over all claims against the defendant. The latter, in contrast, obtains only where a defendant "purposefully direct[s]" his activities toward the state and the plaintiff's claim "aris[es] out of or [is] related to" the defendant's forum contacts. *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 777–78 (5th Cir. 2018) (citations omitted); *Diagnostic Affiliates of Ne. Hou, LLC v. Aetna, Inc.*, 654 F. Supp. 3d 595, 603 (S.D. Tex. 2023). Respectfully, this Court lacks any basis for asserting general or specific jurisdiction over American Health and, further, such an exercise would not comport with the requirements of the U.S. Constitution. This action must therefore be dismissed.

### A. The Court Lacks General Jurisdiction over American Health.

For corporations, such as American Health, the Supreme Court has stated that general jurisdiction exists only if the "corporation's 'affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571

U.S. 117, 137 (2014) (citation omitted). The *Daimler* Court further held that, for a corporation, "the place of incorporation and principal place of business" is where it is "at home" and are thus paradigm bases for jurisdiction. *Id.* at 136; *accord Monkton Ins.*, 768 F.3d at 432. And even before *Daimler*, the Fifth Circuit declined to assert general jurisdiction when the defendant corporation "maintained no offices in Texas; they had no personnel stationed there; they paid no Texas taxes and had no registered agent for service of process; and, although sustained over an appreciable period, transacted only limited and discrete business there." *Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 560 (5th Cir. 2013).

American Health is a non-resident defendant. It is a limited liability company organized under the laws of Delaware with a principal place of business in Michigan. Karam Decl., ¶ 1. It maintains no offices or personnel in this forum, and may not otherwise be said to be at home in this forum. *Id.*, ¶¶ 4–5. Respectfully, this Court lacks any basis for asserting general jurisdiction over American Health.

**B. The Court Lacks Specific Jurisdiction over American Health.**

"Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)). The defendant's suit-related conduct must create a substantial connection with the forum state, and "the relationship must arise out of contacts that the defendant himself creates with the forum State," with the "minimum contacts analysis look[ing] to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 1122 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475

(1985); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). The plaintiff cannot be the only link between the defendant and the forum. *Associated Energy Group, LLC v. Air Cargo Germany GMBH*, 24 F. Supp. 3d 602, 609 (S.D. Tex. 2014). It is thus the ***defendant's conduct***—and not the conduct of any third party—that must form the necessary connections with the forum state to support the basis for specific jurisdiction. *Walden*, 134 S. Ct. at 1122–23 (citing *Burger King*, 471 U.S. at 478).

Plaintiff cannot meet this burden. Neither American Health nor anyone acting on its behalf have ever made or directed anyone to make any telephone sales calls to Plaintiff at any time. Karam Decl. ¶¶ 10, 16. American Health undertook a thorough search of its records and found no record of any American Health employee using the phone numbers included in the Complaint. *Id.*, ¶ 11. Nor did American Health find any record of any call it placed to Plaintiff. *Id.* At most, American Health *received* a call from LiveTransfers, an independent sales broker with whom American Health has no contractual or ongoing business relationship. *Id.*, ¶ 15. But there, any action taken directed at the forum state was by LiveTransfers, not American Health.

Plaintiff does not allege otherwise. Indeed, none of the callers with whom Plaintiff purportedly spoke indicated that they were with American Health; they merely stated, according to Plaintiff, that they were calling "regarding the ACA and soliciting dental and vision health care." Doc. 1, ¶¶ 37, 40–42, 46. Plaintiff does allege that one call he received was eventually transferred to a non-caller, who in turn self-identified as an American Health employee and purportedly emailed him the information he requested.[1] But agency cannot be assumed from the mere fact that one does an act for another. *See Callier v. Nat'l United Group, LLC*, No. 21-0071, 2022 WL

[1] Notably, the email Plaintiff provided in support of his claim was not directed to Plaintiff, but rather to a different person—Jamie Chacon. *See* Doc. 1, Exhibit A.

20046134, at *10 (W.D. Tex. Jan. 26, 2022). Rather, and as discussed at length herein, Plaintiff must allege some action ***by American Health*** that would support the finding that American Health had the right to direct or control the actions of the alleged caller. Plaintiff does not. Thus, even crediting Plaintiff's allegations—and this Court should not in the face of American Health's contrary evidence, *see Pace*, 636 F. Supp. 3d at 720—the caller's alleged unilateral reference to American Health is insufficient to hold American Health directly or vicariously liable for the call. *See, e.g.*, *Wide Merch.*, 2023 WL 3167440, at *7 (dismissing for lack of jurisdiction where defendant established through affidavit lack of control over caller); *Pavelka v. Pelican Inv. Holdings Grp., LLC*, No. 22-0074, 2022 WL 3159275, at *7 (N.D. Tex. Aug. 8, 2022) (same); *Winters v. Grand Caribbean Cruises Inc.*, No. 20-0168, 2021 WL 511217, at *5 (D. Ariz. Feb. 11, 2021) (dismissing for lack of jurisdiction as allegation that "callers identified themselves as representatives of Grand Caribbean" insufficient to establish agency "because this again says nothing about control"); *Callier v. SunPath Ltd.*, No. 20-0106, 2020 WL 10285659, at *4 (W.D. Tex. Aug. 10, 2020); *Klein v. Just Energy Grp., Inc.*, No. 14-1050, 2016 WL 3539137, at *12 (W.D. Pa. June 29, 2016) (caller's self-identification as "Just Energy" insufficient to evidence authority to act on behalf of the "Just Energy" defendants).

Judge Montalvo's recent decision in *Callier v. Wide Merchant Investment, Inc.* is particularly instructive. There, Plaintiff allegedly received "dozens" of calls in violation of the TCPA from Synergy Financial, which were allegedly placed at the behest of co-defendants—WMI and BCS—to market WMI's financial services. No. 22-0123, 2023 WL 3167440, at *1 (W.D. Tex. Apr. 27, 2023). Because Synergy—not WMI or BCS—placed the alleged calls, the court found that it could exercise personal jurisdiction over these defendants if—and only if—it found Synergy was acting as their agent. *Id.* at *4. It could not. The defendants submitted an affidavit stating that,

even though BCS did contract with Synergy to market WMI's services: neither WMI nor BCS exercised any control over the means and methods by which Synergy carries out its duties under the contract; WMI and BCS had no control over Synergy's marketing campaign, how Synergy obtained leads, or what Synergy said during calls; neither WMI or BCS had any knowledge that Synergy was making telemarketing calls in violation of the TCPA; and either party could terminate the relationship at any time. *Id.* at *4–5.

By comparison, American Health's relationship with LiveTransfers is nonexistent. Karam Decl., ¶ 17. American Health has no control over the means or methods by which LiveTransfers makes outbound calls or the ability to oversee or manage LiveTransfers practices. *Id.* Nor did American Health have any control over how LiveTransfers obtained leads or what LiveTransfers says during calls. *Id.* American Health did not authorize LiveTransfers to use American Health's logo, trademark, or trade name. *Id.* And at no time did American Health have a formal contract or agreement with LiveTransfers. *Id.* Meanwhile, LiveTransfers holds itself out as providing only "TCPA compliant call center contacts and qualified prospects." *Id.*, ¶ 14; *see also id.*, ¶ 16 (LiveTransfers provided consent information for call). Thus, as it was LiveTransfers—not American Health—that placed any and all relevant calls to Plaintiff, this Court cannot find that American Health purposefully directed any actions at Texas related to this suit and are not subject to specific jurisdiction in this action. *See Wide Merch.*, 2023 WL 3167440, at *5; *SunPath*, 2020 WL 10285659, at *4 (dismissing TCPA action based on affidavit stating defendants lacked control or oversight over third-party marketing firms and did not select to whom or the manner in which third-party marketing firms market).

American Health has not "purposefully directed" any activities into Texas and cannot otherwise be held vicariously liable for such activities. *See, e.g., Horton v. SunPath, Ltd.*, No. 20-

1884, 2021 WL 982344, at *4 (N.D. Tex. Feb. 16, 2021) (finding court lacked personal jurisdiction over TCPA defendant where "[p]laintiff has not alleged any facts to show that [d]efendant directly contacted him" or directed any caller "to take any action with respect to Texas"); *Shanahan v. Nat'l Auto Prot. Corp.*, No. 19-3788, 2020 WL 3058088, at *4-5 (N.D. Ill. June 9, 2020) (dismissing TCPA action for lack of personal jurisdiction where plaintiff failed to allege facts showing defendants directed to whom caller placed telemarketing calls). Nor has Plaintiff identified any action taken by American Health purposefully directed at Texas or that resulted in any alleged injury to Plaintiff. Respectfully, this Court cannot exercise specific jurisdiction over American Health. *See, e.g.*, *Zelma v. Burke*, No. 16-2559, 2017 WL 58581, at *3 (D.N.J. Jan. 4, 2017) (dismissing the complaint for lack of personal jurisdiction because "Plaintiffs have not provided any evidence that the phone calls giving rise to their Complaint were initiated by the [defendants]") (citation omitted)); *Moreland v. SunPath, Ltd.*, No. 21-0110, 2021 WL 6773100, at *3 (E.D. Tex. Sept. 10, 2021) (granting a motion to dismiss for lack of personal jurisdiction where Plaintiff could not sufficiently plead that Defendant made the call); *Smith v. Securus Techs., Inc.*, 120 F. Supp. 3d 976, 981–83 (D. Minn. 2015) (finding TCPA claim failed where defendant did not "make" the alleged call).

### C. The Exercise of Personal Jurisdiction Over American Health Would Not Comport with Due Process.

Further, exercising personal jurisdiction over American Health—who is not present in this jurisdiction—would not comport with fair play and substantial justice. *See Int'l Shoe*, 326 U.S. at 316. Factors to consider include "the burden on the defendant, the interests of the forum State, the plaintiff's interest in obtaining relief, 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.'" *Asahi Metal Indus. Co.*, 480 U.S. at 113 (citation

omitted). The burden for American Health, which maintains its offices in Michigan, to appear or send representatives to Texas to defend itself in this baseless litigation, which concerns a handful of alleged phone calls, is unreasonably high. Regardless, "allow[ing] the litigation to occur in [Texas] would not comport with the traditional notions of fair play and substantial justice" when American Health did not purposefully direct any activities at the forum. *J.B.S. Cranes & Accessories, Inc. v. All-Cal Equip. Servs. Inc.*, No. 19-729, 2020 WL 33117, at *4 (W.D. Pa. Jan. 2, 2020) (dismissing complaint for lack of personal jurisdiction). Accordingly, there is no basis upon which this Court can exercise jurisdiction over American Health in this action.

## II. Alternatively, This Court Should Dismiss the Complaint Because Plaintiff Fails to State a Claim for Violation of the TCPA or Section 302.101.

When ruling on a Rule 12(b)(6) motion to dismiss, district courts evaluate whether "the complaint states any legally cognizable claim for relief." 5B Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1357 (3d ed. 2022). In other words, a complaint must "contain sufficient factual matter" that, if accepted as true, states a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But while courts "must take all of the factual allegations in the complaint as true," this presumption is "inapplicable to legal conclusions couched as factual allegations." *Johnson v. Harris Cnty.*, 83 F.4th 941, 945 (5th Cir. 2023) (quoting *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023)). Hence, district courts may not "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.* (quoting *Armstrong*, 60 F.4th at 269); *see also Iqbal*, 556 U.S. at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Where the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown "that the pleader is entitled to relief" and is properly dismissed. *Iqbal*, 556 U.S. at 679.

Plaintiff's claims against American Health are as follows: in Count I, he alleges American Health violated the TCPA by placing calls to a "residential telephone number . . . registered on the National Do-Not-Call Registry" in violation of 47 C.F.R. § 64.1200(c)(2) (Doc. 1, ¶ 73); and in Count II he alleges American Health violated Section 302.101 by placing "solicitation sales calls to Plaintiff without having a valid telephone solicitation [certificate]" (*id.*, ¶ 78). Both claims fail, and the Complaint should be dismissed with prejudice.

**A. American Health Cannot Be Held Directly or Indirectly Liable for Any Alleged Call.**

To be directly liable for a telemarketing call, a defendant must be the entity that "initiates" the call. *See Hunsinger v. Dynata LLC*, No. 22-00136, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 22-0136, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). "Initiating" a telephone call means that the entity takes the necessary steps to "physically place a telephone call or be 'so involved in the placing' of the call that the entity essentially made it themselves." *Warciak v. Subway Restaurants, Inc.*, No. 16-8694, 2019 WL 978666, at *2 (N.D. Ill. Feb. 28, 2019), *aff'd*, 949 F.3d 354 (7th Cir. 2020); *see also Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019); *In re Joint Petition filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 (2013) ("We conclude that a person or entity 'initiates' a telephone call when it takes the steps necessary to physically place a telephone call . . . .").

Plaintiff does not (and cannot) allege that any American Health personnel initiated any call to Plaintiff. For example, Plaintiff does not allege that any call originated from an American Health number, and no caller is alleged to have identified themself as associated with American Health. *See* Doc. 1, ¶¶ 37, 40–42, 46 (alleging callers stated only that they were calling "regarding the ACA and soliciting dental and vision health care"). At most, Plaintiff alleges that, on one of the nine calls alleged, the caller ultimately transferred the call to a different individual who "stated she

was employed with [American Health]" (*id.*, ¶ 45), but this individual did not initiate the call. Otherwise, Plaintiff rests on speculative and conclusory allegations that the callers were "offshore telemarketers" employed by American Health's "agent ('Fake ACA')"—not employed by American Health directly. Doc. 1, ¶¶ 59, 61. Thus, even crediting Plaintiff's speculative allegations—and this Court should not—Plaintiff offers no basis for holding American Health directly liable for the alleged calls. *See Hunsinger*, 2023 WL 2377481, at *5.

Nor does Plaintiff allege facts that would justify holding American Health vicariously liable for the alleged calls. As Plaintiff concedes, a party may only be held vicariously liable for calls made by third parties if doing so comports with common-law theories of agency. Doc. 1, ¶ 59 (quoting *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. at 6584 (2013)). Thus, a principal may be held liable for a call made by its agent if—***and only if***—the plaintiff can establish the agent acted with the requisite authority. *Dish Network*, 28 FCC Rcd. at 6584 (recognizing actual, apparent, and ratified authority as the three relevant forms of authority).

As is well settled, an agency relationship only arises when a principal manifests assent to an agent that the agent shall act on the principal's behalf and subject to the principal's control, and the agent consents to so act. *See Indian Harbor Ins. Co. v. Valley Forge Ins. Grp.*, 535 F.3d 359, 364 (5th Cir. 2008); *Comty Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017). Thus, to establish ***any*** agency relationship—be it through actual, apparent, or ratified authority—there must be some manifestation ***by the principal*** that the agent shall act for him. *See Indian Harbor*, 535 F.3d at 364; *Cactus Pipe & Supply Co. v. M/V Montmartre*, 756 F.2d 1103, 1111 (5th Cir. 1985); *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952–53 (Tex. 1996) (per curiam); *see also Aaronson v. CHW Grp., Inc.*, No. 18-1533, 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-2440, 2015 WL 7736547, at *6 (S.D.N.Y.

Nov. 30, 2015)); *Kline v. Elite Med. Lab., Inc.*, No. 19-1043, 2019 WL 6828590, at *5 (M.D. Pa. Dec. 13, 2019).

Here, ***Plaintiff alleges no action by American Health***. At best, Plaintiff alleges that one caller transferred one call to an individual self-identifying as an American Health employee. But the unilateral action of this one caller does not evidence an agency relationship, as agency cannot be assumed by the action of another—here, an unknown caller—or even by the transferee's acceptance thereof. *See, e.g.*, *Hunsinger*, 2023 WL 2377481, at *6 ("A sheer possibility that a third party—on Dynata's behalf—initiated a call or a text to Hunsinger does not establish an agency relationship sufficient to state a claim under the TCPA."). Hence courts routinely find that the receipt of live transfer is insufficient to find an agency relationship existed between the caller-transferer and the defendant-transferee. *See, e.g.*, *Katz v. CrossCountry Mortg., LLC*, No. 22-0925, 2022 WL 16950481, at *5 (N.D. Ohio Nov. 15, 2022) (dismissing TCPA claim); *Schick v. Caliber Home Loans, Inc.*, No. 20-0617, 2021 WL 4166906, at *2 (N.D. Cal. Sept. 14, 2021) (same); *Stark v. Stall*, No. 19-0366, 2020 WL 13158003, at *4 (S.D. Cal. Aug. 20, 2020) (same).

Regardless, Plaintiff fails to allege any ***relationship of control*** between American Health and the actual "callers." To hold a defendant vicariously liable, a plaintiff must allege ***facts***—not conclusions—regarding the relationship between the defendant and alleged agent "that show defendant had the right to control the party making the calls; plaintiff cannot simply allege general control in a vacuum." *Aaronson*, 2019 WL 8953349, at *3; *see also Indian Harbor*, 535 F.3d at 364; *Cactus Pipe & Supply*, 756 F.2d at 1111. Absent such ***facts***, an agency relationship between a caller and a seller cannot be established. *See, e.g., Born v Celtic Marketing LLC*, No. 19-1950, 2020 WL 3883273, at *4 (C.D. Cal. May 20, 2020) (finding no agency relationship "[b]ecause [plaintiff] has failed to show that [defendants-sellers] exercise any control over [the caller's]

activities"); *Winters*, 2021 WL 511217, at *5 (finding no agency relationship as their were no allegations to support finding defendant controlled caller). Accordingly, courts routinely reject the type of boilerplate allegations of control often asserted by TCPA plaintiffs—including Plaintiff here.[2]

Plaintiff offers no factual allegation indicating American Health controlled any caller referenced in the Complaint. No agency relationship therefore is alleged. Absent ***factual*** allegations demonstrating that the actual caller acted subject to American Health's actual or apparent authority and control, the Complaint must be dismissed. *See, e.g.*, *Elite Med. Lab Inc.*, 2019 WL 6828590, at *6; *Aaronson*, 2019 WL 8953349, at *3 (dismissing complaint that contained only conclusory allegations that the caller was defendant's agent); *Direct Building Supplies*, *LLC*, 2021 WL 4623275, at *3 (citing cases); *Born*, 2020 WL 3883273, at *4.

### B. Plaintiff's TCPA Claim Fails as He Does Not Allege Any Calls to a Residential Telephone Subscriber in Violation of the DNC Regulations.

Plaintiff asserts a single claim against American Health under the TCPA: namely, for allegedly calling his cellular phone after it was "successfully registered on the National Do-Not-Call Registry" in violation of 47 C.F.R. § 64.1200(c)(2). Doc. 1, ¶¶ 30, 73. Plaintiff, however, fails to allege a key element of his claim. Section 64.1200(c)(2) provides, in relevant part, that "[n]o

---

[2] *See, e.g., Horton v. Nat'l Republican Senatorial Comm.*, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (finding similar allegations "fail[ed] to plead more than conclusions and formulaic recitations of vicarious liability"); *Aaronson*, 2019 WL 8953349, at *3 (dismissing complaint that contained only conclusory allegations that the caller was defendant's agent); *Callier v. Nat'l United Grp., LLC*, No. 21-0071, 2022 WL 20046134, at *12 (W.D. Tex. Jan. 26, 2022) (same); *Smith v. Direct Building Supplies, LLC*, No. 20-3583, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (same) (collecting cases); *Marks v. Unique Lifestyle Vacations, LLC*, No. 20-4915, 2023 WL 3294845, at *3 (E.D. Pa. May 5, 2023) (holding plaintiff has not pleaded facts to show defendant was making the calls); *Lifestyles Dev., LLC*, 2019 WL 4282039, at *5 (finding allegation of affiliation agreement between parties insufficient to find defendant vicariously liable for call); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-1216, 2018 WL 835222, at *6 (N.D. Ill. Feb. 13, 2018) (finding plaintiff did not sufficiently plead manifestations of authority when the telemarketers simply mentioned defendants' products on their phone calls).

person or entity shall initiate any telephone solicitation to . . . [a]ny ***residential telephone subscriber***" listed on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). Indeed, the TCPA limits the FCC's authority to promulgate regulations only as "needed to protect ***residential*** telephone subscribers." 47 U.S.C. § 227(c)(1), (3) (emphasis added). Thus, to assert a claim under these DNC regulations, a plaintiff must allege facts establishing the called number is associated with "a ***residential*** telephone subscriber."

Plaintiff does not. To the contrary, Plaintiff admits that any calls were made to his "cellular phone." Doc. 1, ¶ 71. But as recognized in *Callier v. GreenSky, Inc.*, a call to a cellular phone is not a call to a "residential telephone subscriber":

> By its plain terms, 47 C.F.R. § 64.1200(d)(1) prohibits telemarketing calls made to "**a residential telephone subscriber**." 47 C.F.R. § 64.1200(d)(1). Plaintiff alleges that the calls were placed **to his cellphone**, not a residential line. Within his Response, Plaintiff expands on his allegations regarding Defendant's do-not-call policies but does not address Defendant's argument that **the regulation does not apply to cellphones**. *See* Resp. 4. Plaintiff does not cite—and the Court is not aware of—**any authority that has found § 64.1200(d)(1) applicable to cellphones**. Accordingly, the Court finds that this claim fails as a matter of law.

No. 20-00304, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021) (emphases added). While the plaintiff in *GreenSky* asserted a claim related to § 64.1200(d), the same result must follow under § 64.1200(c), which also applies only to telemarketing calls made to "**[a] residential telephone subscriber**." 47 C.F.R. § 64.1200(c)(2) (emphasis added).[3]

[3] The distinction between "residential" phones and "cellular" phones under the TCPA is widely acknowledged. *See, e.g.*, *Zehala v. Am. Express*, No. 10-00848, 2012 WL 1657061, at *4-5 (S.D. Ohio May 9, 2012); *Rogers v. Interstate Nat'l Dealer Servs. Inc.*, No. 20-00554, 2020 WL 4582689, at *2 (N.D. Ohio Aug. 10, 2020) ("The TCPA places limitations on unsolicited calls to both residential and cellular phones . . . ."); *Morgan v. U.S. Xpress, Inc.*, No. 17-00085, 2018 WL 3580775, at *2 (W.D. Va. July 25, 2018) ("The structure of the statute makes it clear that a call can be to either a cell phone or residential line, and the statute addresses those two distinct possibilities in two different sections. Plaintiff's arguments would erase that distinction.").

Recognizing this issue, Plaintiff seeks to recast his "cellular phone" as a "residential number" by alleging it to be his "personal cell phone that he uses for personal, family, and household use." Doc. 1, ¶ 71. Judge Cardone rejected such allegations in *GreenSky*, dismissing DNC claim despite the plaintiff raising identical allegations. *Compare id.*, *with* 2021 WL 2688622, at *4. Further, Plaintiff acknowledges that he uses his cellular phones for purposes other than to "communicate with friends and family", including for "business purposes." Doc. 1, ¶ 71. "[B]usiness numbers are not permitted to be registered on the Do Not Call Registry." *Worsham v. Discount Power, Inc.*, No. 20-0008, 2021 WL 50922, at *4 (D. Md. Jan. 6, 2021) (dismissing claim where number was used for residential and business purposes); *see also Shelton v. Target Advance LLC*, No. 18-02070, 2019 WL 1641353, at *6 (E.D. Pa. Apr. 16, 2019) (finding telephone used for business purpose did not qualify as residential).

As the *GreenSky* court already found, Plaintiff's reliance on his "cellular phone"—which is inherently untethered to his residence—to assert DNC claims fail in the face of the regulation's plain language, and as such, his TCPA claim must be dismissed with prejudice.

### C. Plaintiff Fails to Allege Facts Supporting a Section 302.101 Violation and, in Any Event, Lacks a Right of Action to Assert this Claim.

Plaintiff's Section 302.101 claim also falls short. Plaintiff asserts that American Health violated Section 302.101 by "placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State" and he is therefore entitled to $5,000 per call he received. Doc. 1, ¶ 79. Plaintiff's Section 302.101 is incorrect as plead and must be dismissed, as: (1) Plaintiff's claim is impermissibly based on a threadbare recital of the claim's elements; (2) Section 302.101 provides a limited private right of action under the DTPA, which the allegations do not support; and (3) Plaintiff may only pursue "economic damages or damages for mental anguish," which he did not sustain.

First, Plaintiff improperly offers only a threadbare recital of the elements of the claim, with no facts outlined to support his claim to relief. A plaintiff must allege "factual matter" sufficient to find a claim "plausible on its face." *Iqbal*, 556 U.S. at 678. Instead, Plaintiff merely parrots the statutory language, asserting the elements of the claim as fact. *Compare id.*, ¶¶, 42, 54, *with* Tex. Bus. & Comm. Code § 302.101 ("A seller may not make a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made."). Such "naked assertions devoid of further factual enhancement" are facially insufficient and cannot survive a Rule 12(b)(6) motion (or otherwise). *Johnson*, 83 F.4th at 945; *see also Horton v. Advantage One Brokers Corp.*, No. 22-2474, 2023 WL 4188291, at *4 (N.D. Tex. June 5, 2023) (denying default judgment where plaintiff "'tells' he Court the elements of Section 302.101 . . . but does not 'explain' how this would allow the Court to conclude" the caller operates without a certificate), *report and recommendation adopted*, No. 22-2474, 2023 WL 4188046 (N.D. Tex. June 26, 2023); *Callier v. Defendant Home Loans, Inc.*, 2022 WL 16858520, at *6 (W.D. Tex. Nov. 10, 2022) (dismissing claims as conclusory).

Second, even if Plaintiff adequately alleged a Section 302.101 violation (he did not), he lacks any basis for relief. As Plaintiff concedes, Section 302.101 provides a private right of action ***only*** through the DTPA. Doc. 1, ¶¶ 77–80 (citing Tex. Bus. & Com. Code § 302.303). To succeed on a DTPA claim, a plaintiff must also establish that he "relied to his detriment on the deceptive act." *Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 824 (Tex. 2012) (citing Tex. Bus. & Com. Code § 17.50(a)(1)(b)). In other words, to state a claim, Plaintiff must allege that he relied on American Health's ***holding of a registration certificate*** to his detriment, and that American Health's purported ***failure to hold a registration certificate*** resulted in actual economic injury or mental anguish. He does not and cannot so allege. Nowhere does Plaintiff allege that he took any

steps in reliance on American Health being registered with the Secretary of State, or that he was (or is) even aware of American Health's registration status. *Arencibia v. AGA Serv. Co.*, No. 20-0819, 2020 WL 10056799, at *6 (N.D. Tex. Nov. 13, 2020) (dismissing DTPA claim where plaintiff acted based on the policy offered, not the misrepresentation alleged).

Nor does Plaintiff allege any resulting harm. The DTPA's private right of action is limited to instances where the "'deceptive act or practice' causes 'economic damages or damages for mental anguish.'" Tex. Bus. & Com. Code § 17.50(a)(1); *see, e.g.*, *Johnson v. Palmer Admin. Services, Inc.*, No. 22-00121, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022), *report and recommendation adopted*, No. 22-00121, 2022 WL 16919786 (E.D. Tex. Nov. 14, 2022). At best, Plaintiff alleges that the "calls" (not any registration status) harmed him by causing a "nuisance and invasion of privacy." Doc. 1, ¶ 67. But such harm is unrelated to American Health's registration status and, in any event, falls well short of the "economic or damages for mental anguish" required to assert a claim. The DTPA was enacted to "protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty," Tex. Bus. & Com. Code § 17.44(a), not to enrich unscrupulous TCPA plaintiffs.

Finally, even if Plaintiff had stated a claim for relief under the DTPA (he did not), his damages are limited to the actual harm sustained. *Rathmann v. Ford Motor Co.*, No. 21-0610, 2023 WL 6150270, at *7 (W.D. Tex. Aug. 25, 2023), *report and recommendation adopted*, No. 21-00610, 2023 WL 6150787 (W.D. Tex. Sept. 20, 2023). Plaintiff nonetheless seeks to recover up to $5,000 per alleged call received, citing Tex. Bus. & Com. Code § 302.302(a). Doc. 1, ¶ 79. This provision, however, pertains to the "civil penalty" recoverable by the Texas Attorney General, not a private individual. *See* § 302.302. "Generally, a statutory penalty or fine is not payable to a private litigant." *Brown v. De La Cruz*, 156 S.W.3d 560, 564 (Tex. 2004). Texas "statute[s]

providing for a [] penalty unrelated to actual losses must be strictly construed, and may be asserted in a private cause of action only if the statute clearly so provides." *Id.* at 565. When a statute that provides for a civil penalty is silent as to who may file suit to recover it, the Texas Supreme Court has "strictly construed" the statute to permit a claim only by "the Attorney General or some other governmental entity or representative." *Id.* at 563–65 (holding statute stating "seller who violates Subsection (a) is subject to a penalty" did not create a private cause of action).

Here, the "Civil Penalty" provision states simply that "[a] person who violates this chapter is subject to a civil penalty of not more than $5,000 for each violation." § 302.302(a). The statutory scheme further contemplates that the Texas Attorney General—not any individual—is properly positioned to enforce the statute. *See* § 302.301 (requiring attorney general to take certain steps before seeking an injunction); § 302.302(b), (c) (providing for increased civil penalties recoverable by attorney general when an injunction is violated). By contrast, the legislature chose to empower individuals with a private right of action via the DTPA only. Given this overall framework, the "civil penalty" provided must be strictly construed as unavailable to Plaintiff. Because Plaintiff has not asserted any economic damages or mental anguish as required as the statute, and the "civil penalty" is unavailable, he has not stated a claim under Section 302.101.

## **CONCLUSION**

For the foregoing reasons, American Health respectfully requests that this Court grant its Motion and issue an Order dismissing Plaintiff's Complaint with prejudice.

Dated: New York, New York
December 21, 2023

COZEN O'CONNOR, P.C.

*/s/ Tyler M. Frankel*
Rachel B. Soloman (admitted *pro hac vice*)
3 WTC
175 Greenwich Street, 55th Floor
New York, NY 10007
rsoloman@cozen.com

Tyler M. Frankel
State Bar Number: 24101767
1717 Main Street, Sute 3100
Dallas, Texas 75201
tfrankel@cozen.com

**CERTIFICATE OF SERVICE**

I hereby certify that I filed the above pleading and all accompanying documents through the Court's electronic filing system on December 21, 2023 and that the above pleading and all accompanying documents will be served on all parties and counsel of record through the Court's electronic filing system.

*/s/ Tyler M. Frankel*
Tyler M. Frankel